S.C.I., Mr. Dionne, and Ms. Kiefer. Did I pronounce that semi-correctly or not? Absolutely, Your Honor. Dionne. May it please the Court, I'll marshal Dionne from Mr. Workman v. Supt.Albion, for Mr. Kiefer. Mr. Workman, I'd like to reserve, if I might, two minutes for rebuttal. Thank you. Jeffrey Workman was represented at trial by an attorney who presented no cogent defense strategy. This is proven by the record. Trial counsel told Mr. Workman, don't worry, you can't possibly be convicted. Don't have to worry about a deal, you don't have to worry about testifying, you can't be convicted. And how we know this is that that's what he argued to the trial judge in the motion for judgment of acquittal, and that's what he argued to the jury. He argued that Mr. Workman could not be convicted because a bullet from his co-defendant's gun had already slain the victim. Despite the fact that the medical examiner testified that the decedent was not dead immediately from the bullet that struck him. There's some basis for that, though, isn't there? Because three witnesses testified after the sequence of the shooting. Three witnesses testified that Hunt, I think his name is, was down at a moment when the defendant, Workman, pulled his gun out. In other words, he was already down and shot. And one witness said that he or she heard four shots. So there's a basis for the trial attorney's decision. Judge, it seems to me, and I agree with the Commonwealth, that Strickland counsels us to avoid the distorting effects of hindsight. But when I looked at this record, and when I think any reasonable person looks at this record, if you're going to make that statement to your client, you have an obligation to do some homework. You have an obligation to look at the medical examiner's autopsy report, which says that either bullet could have killed. If either bullet could have killed, then Mr. Workman's bullet could have killed. That by itself precludes the notion that Mr. Hunt was dead at the time that Mr. Workman's bullet ricocheted into Mr. Hunt. Secondly, and I've asked this court for a remand. I'm not here to suggest that Mr. Workman can prevail at the moment. There's not sufficient record. What additional evidence would you present if this were to be remanded? It seems to me that a reasonable post-conviction attorney, and in this case a reasonable habeas attorney, would interview the medical examiner. Because that's what a trial lawyer would do. Are you referring to trial counsel or appellate counsel on post-conviction? It's a great question, and the answer is both. The reason that the answer is both is because the United States Supreme Court's cases on ineffective assistance of trial counsel and those cases in habeas corpus that have dealt with ineffective assistance of counsel suggest that whatever a trial counsel would do in terms of investigation, so must a post-conviction counsel do. What do you make of this discussion in this case about the 10-20 year offer? Are you pursuing that one? Yes, Your Honor. All we have is Mr. Workman's allegation that he was provided that offer. There's nothing else in the record. I supplemented the record in the case with an undated letter from Mr. Workman to his PCRA counsel in which he shares with his PCRA counsel a story that his trial attorney said that there was an offer, but that he need not even think about that offer because he could not be convicted. Kind of self-serving, isn't it? Of course it is, but that's exactly why we need an evidentiary hearing. What I can tell you is that there is in the record letters from PCRA counsel to Mr. Workman, one of which dated January 28, 2012, I believe. I'll check the record. But there's a letter from PCRA counsel to Mr. Workman saying, as soon as I get your letter, I'll be able to decide what claims to raise. That suggests to me that PCRA counsel had sought from Mr. Workman some correspondence about what Mr. Workman thought were the claims in the case. I supplemented the record with a letter from Mr. Workman relating this story that trial counsel said to him. There's this offer, but you don't need to think about it because you can't be convicted. It seems to me that we need an evidentiary hearing to find out whether there was an offer, what that offer was, when it was communicated to PCRA counsel. Does Mr. Workman represent that there's an offer of 10 to 20 conveyed or not conveyed? In the undated letter with which I supplemented the record, that's the term that Mr. Workman says was offered. I have no information more than that. But what we do see from the trial record is the trial counsel pursued a strategy that conforms to the advice that Mr. Workman says his trial counsel gave him, which is don't worry about taking a plea, don't worry about testifying because you can't be convicted. Ineffectiveness of counsel was not brought up on the post-conviction proceeding in the state court, was it? That's correct, Judge Fuentes. Ineffective assistance of trial counsel on that regard. There was one single claim raised in the PCRA petition. So would you say that appellate counsel was ineffective for not raising the issue? No, Your Honor, because an ineffective assistance of trial counsel claim cannot be raised on appeal under Pennsylvania law. It has to be raised in a post-conviction relief act petition. So it wouldn't have been right for appellate counsel to have raised that claim on direct appeal. There's another reason why that wouldn't make sense anyway, and that's because appellate counsel was also trial counsel. And many courts have said you can't expect trial counsel who's doing the appeal to raise ineffective assistance against himself. But setting that aside, Pennsylvania law is clear under Commonwealth v. Graham that an ineffective assistance of trial counsel claim isn't right on direct appeal and can only be raised in a post-conviction relief act claim. Post-conviction counsel raised a single claim. He raised an ineffective assistance of trial counsel claim, but his claim was trial counsel was ineffective for not asking the trial court for a transferred intent instruction to apply to a defense of others' defense. And Judge Prentiss, I can only react to your reaction because the Pennsylvania Superior Court called that claim nonsensical. That's not my term. That's the term that was used by the Pennsylvania Superior Court. So if we're looking at whether or not Mr. Workman had effective assistance of counsel in PCRA proceedings, I assume what he meant was that he wanted instructions that there could be a defense to a transferred intent and the defense would be the defense of others. Is that what he was intending? That's the only thing I can make of it. In honesty, Judge Ambrose, I can't make heads or tails of it, and I have tried, and neither could the Pennsylvania Superior Court because it seems to me, by definition, a defense of others' defense undercuts a transferred intent theory of prosecution. So I can't understand exactly why a defense lawyer would want to inject a transferred intent theory into a case. That's a government theory to pin culpability on someone. How does transferred intent work? I mean, if I, let's say, shoot into a crowd and I'm shooting at X, and the bullet goes through X, doesn't kill that person, but kills Y right behind him, is that how it works? Transferred intent, as I understand it, Your Honor, is that if I intend to shoot someone and I don't shoot that person but someone else gets killed, then the fact that I had intent to kill person A even though I killed person B, that intent to kill person A is transferred for purposes of culpability to person B. The reason that this is interesting in this case is that the facts of the case suggest that there really was a viable defense of others' defense that was really never developed. Indeed, the Pennsylvania Superior Court called that underdeveloped. There was an instruction from the trial court because the trial court concluded there was sufficient evidence to warrant such an instruction. I'm getting far afield, but if this were to go back on remand, wasn't the facts that came out that he, Mr. Workman, came back, saw Mr. Hunt on the ground, and they didn't really find Moses for a brief period of time and was hiding behind a tree or something? Was that correct? So there is evidence in the trial record that the first lay witness presented by the government, Josephine Velez, saw Mr. Workman shoot at Mr. Hunt. Not saw Mr. Workman shoot at Mr. Hunt, saw Mr. Moses shoot at Mr. Hunt. First right. Okay, the first shot. There's also evidence from a witness named Allen, as well as Ms. Velez, so two lay witnesses who saw Mr. Moses peering around a corner when Mr. Workman returned fire to the senior. Now, the state makes much of the fact that there was a perhaps three, four minute passage of time between Mr. Moses shooting at Mr. Hunt and Mr. Workman returning fire. It seems to me that the defense of others' defense is, so long as this other person is in harm's way, how much time elapses isn't particularly relevant. If we remand this for an evidentiary hearing, what specifically are you looking for? I think that there should be an evidentiary hearing in the district court on two issues. Number one, whether ineffective assistance of post-conviction counsel establishes cause for the failure to raise in state court the ineffective assistance of trial counsel claim. Well, I don't think a mishap or a matter of strategy is sufficient, because under Martinez you really have to show that your claim has merit. It's a winnable thing. Under Martinez you have to show that the underlying claim is substantial. And the Supreme Court has made the claim has merit. The claim has merit. Which arguably may be... Substantial may be a little higher than merit. Yeah, maybe. My point here is that when the United States Supreme Court has defined that term, it's defined it with the same standard as a certificate of appealability. Is there sufficient evidence about which reasonable jurists could differ? Why don't you just verbalize what merit your claim has, your client's claim has. When I look at the record, when any reasonable lawyer looks at this trial record, there appears to be evidence from which some defense could have been put together, some trial defense. Rather than putting together a trial defense, trial counsel tells his client, don't worry about taking the plea, don't worry about testifying, you cannot be convicted of homicide. No degree of homicide. Because Mr. Hunt was already dead when your bullet struck him. I can't find, when I look at the record, any reasonable basis for providing that advice. So what would be the second issue you want to explore on your end? Thank you, Judge Estrepo. The first issue would be ineffective assistance of post-conviction counsel to establish cause for failing to raise a claim of ineffective assistance of trial counsel. The second issue would be the underlying claim of ineffective assistance of trial counsel. And I see that I'm out of time. Did you say that the appellate counsel on the post-conviction relief is the same lawyer who tried the case? No, Your Honor. The appellate lawyer, the direct appeal from the conviction to the Pennsylvania Superior Court was the same as trial counsel. PCRA counsel was a different lawyer. Right. Got it. Thank you. Thank you. Ms. Keefer. May it please the Court, my name is Catherine Keefer and I represent the appellees in this case. There are three critical points that we need to address from the beginning. The first is that Workman, to this day, has failed to even allege that he made PCRA counsel aware of the supposed promise made by his trial counsel. It's just basic law found in Strickland itself, that counsel's actions are quite properly based on information supplied by a defendant and an assessment of the reasonableness of counsel's representation depends critically upon the transfer of such information. What promise are you referring to? So, he suggests that trial counsel promised Workman that he couldn't be convicted. You're talking about a plea? Correct, I'm sorry. Good. That promise exists only in Workman's say-so at this moment. But more critically, for the purpose of evaluation under Martinez, he alleges nowhere that he took that knowledge from his brain, which would be the only place it would reside, and told PCRA counsel, hey, oh my gosh, I was made this promise. I shouldn't be in prison at all. I was told I couldn't be convicted. Was there a plea offer made? I have found no evidence of it in our files. I talked to the chief of our homicide unit and she found it fairly surprising to hear that a 10 to 20 would be offered on a case where there were two eyewitnesses to a first-degree murder. Correct. I cannot say with 100% certainty that there was no offer made, but I can say it would be rather unusual, and we have no evidence of it and they have nothing more than the say-so. You know what's unusual, Ms. Kiefer? Correct me if I'm mistaken. The record is lengthy. This is a case where a trial counsel did not make an opening statement. Is that, have I got that right? I could be wrong. I believe that is correct, but as you say, it's a very long record, and my memory of that particular point is solid. And when, at the end of the stage case, made an opening for the first time, is that? I think so. It's unusual, isn't it? It is a bit, yes. It's so unusual that maybe it was deficient. I mean, how could you pass up the opportunity to tell the jury your defense, what your case is about? But it seems to coincide with telling the defendant, don't worry, nothing's going to happen. Well, I think the don't worry, nothing's going to happen is an interesting thing that we need to delve into a little bit more. One thing that I think hasn't been drawn to the court's attention so far is the difference between the medical examiner's testimony at the preliminary hearing and at the trial. At the preliminary hearing, the medical examiner testified, both bullets were independently fatal. I don't know which one came first. That is the entirety of his testimony. It is plausible that a defense attorney, faced with two eyewitnesses and a significant amount of otherwise circumstantial evidence, would try to grasp and be creative for any defense he could put forth, namely being the guy was already dead two to four minutes later before Workman showed up and fired back. Defense counsel has been rather ambushed by the medical examiner's testimony at trial, where for the first time he said, no, no, no, I can tell the heart was still beating, blood was still pumping when the time that the second bullet hit Hunt, therefore establishing that Hunt was alive at the time of the second bullet hitting him. But he didn't say that at the prelim. So if you're defense counsel and you're trying to come up with some strategy to overcome the very significant case the Commonwealth has, and the medical examiner had not at that point said anything about whether or not Hunt was alive at the time of the second bullet, it would be somewhat more understandable that trial counsel would have said, you know what, this is a Philly jury at the CJC. We're going to go in and we're going to try to tell the story that, you know what, two to four minutes passed. He's bleeding out on the sidewalk. He was nonresponsive. It's entirely plausible that that jury might have said, yeah, we're not going to convict this guy of first-degree murder when the first bullet was already fatal and there was no evidence that he knew of at the time. He passes up the chance to tell the jury that the government has the burden to put beyond a reasonable doubt, et cetera, et cetera. He said he wasn't going to present any evidence. Well, I think, you know, the burden always rests with the Commonwealth. Yeah, but this is a chance to tell the jury maybe the theory of what it is that you want to show, and I was very surprised in a case like this that defense counsel would just sit down and say nothing. I can't speak to what he was thinking about that particular thing. It's not a claim that's before this court, frankly. The claim before this court is whether or not trial counsel was ineffective for making a promise. That's the claim before you. Can we take a look at other things counsel did or didn't do that might corroborate the argument that counsel was less than effective? Respectfully, I would say that's beyond the scope of what was argued below, and your role here is to review what the lower court, the district court, did with the information it had at the time. The claim below was whether or not counsel was ineffective for making this supposed promise. That's it. So I would suggest that you're bound by the issue that Workman decided to present to the district court. You mean we can't take into account his conduct in the course of the trial in determining whether he was ineffective? You're the judge. Of course, you're going to look at whatever you want to look at, but I do believe that he has to be bound by what he presents, and it's not fair for us to have to defend against a new argument on appeal that we weren't put on any notice of below. Below the issue was whether or not this promise was made. He did convey information to the district court, I believe to Judge Hay, that an offer of 10 to 20 was never communicated to me, or words to that effect. Is that true? I'm sorry. He said that an offer was never communicated? Right. That he had the offer been communicated, he would have accepted it. My understanding of the procedure is that he said in his traverse to our response that he would have accepted an offer, and then Judge Hay said, you didn't say with any specificity what that would have been, and then in his objections to the R&R, he said, I've accepted the 10 to 20 that was offered, and, oh, by the way, I would have continued to assert my innocence and testified in my own defense. So that was at the objection to the R&R stage is my recollection. So what do you make of that procedurally? Well, it's internally inconsistent to begin with. You can't admit your guilt and accept a plea while at the same time saying you're going to assert your innocence and testify in your own defense. But also I agree with the district court that it's untimely. So what do you do when counsel in state post-conviction relief should have raised the issue of ineffective assistance of counsel, but effectively doesn't? It's not raised for the first time until the case gets into federal court. Well, that's what Martinez is for, but I think we have to remember at the very beginning, even working with himself has never been... Under those circumstances, is it inappropriate to raise the effect of counsel, let's say, in the trial proceedings? It's not inappropriate, but it doesn't mean it's meritorious. No, I guess that's for us to find out. Yeah. What would counsel have had to have done here to have been, in your view, ineffective? Give me a scenario. I mean, there are any number of scenarios where he could have been ineffective. Falling asleep during trial would have been ineffective. I understand, but in terms of the arguments that he presented? I think he did a reasonable job with the very difficult position he had. It's unusual. That's not my question. Okay. My question is, what would, in your view, cross the line to being ineffective assistance of counsel? I think if a promise had truly been made, which I don't think we have proof of, that might come close. I mean, we have other circuits that say that the filing of a habeas petition, in effect, you don't need an affidavit. You take that as your record prior to a hearing. So you've got McKee v. United States from the Second Circuit and Johnson v. the case, I guess, also from the Second Circuit. There's a couple. 11th Circuit is another one. But the point is that the filing of the habeas petition suffices for an affidavit. So there is before us on the record the claim that an offer was made and that if his attorney had not said what he said, that there's no way you can be convicted, he would have accepted that offer. Right. And I think it puts it in the same position as the affidavit that was supplied, you know, against the appellate rules at this stage rather than below, that, you know, it's incredible. There's case law that says when a last-minute biased affidavit comes in that the court generally treats those as incredible because they're so obviously motivated by the purpose of substantiating a claim that otherwise is not legal. Well, let me just take how disparate counsel was here. Files a motion for judgment of acquittal saying that under no circumstance could this person be guilty of homicide of any kind. Okay. Makes some sense, at least on his face. His opening statement says, I'm not going to present any evidence to you at all. And then he stands up at his closing and says, Hunt's dead. You know, why would you want to believe this, you know, Philadelphia assistant medical examiner? Come on. The guy was dead before any bullet from Workman hit him. And you're sitting there and you're going, this doesn't make any sense. It's not a coherence trial strategy. And the reason I'm asking you, you're saying, well, that doesn't devolve to ineffective assistance of counsel. And I'm thinking to myself, if I'm Workman, it would seem that it does, at least on his face. And if you're saying it doesn't, what would satisfy you, that it was ineffective assistance of counsel? I think the thing that keeps it from being ineffective, and this is as I said before, the fact that the medical examiner's testimony switched. So the entire time between the preliminary hearing and the trial, when counsel is preparing and devising his strategy, there's no evidence whatsoever to go against his theory that Hunt was already dead. That doesn't come out until the middle of trial. So his entire strategy is based upon this evidence that comes at the last minute. I can't imagine that defense counsel would be surprised in the middle of trial with this report that suddenly comes out and is not given a chance to say, well, you need a continuance or something like that. You mean defense counsel saw up for the first time in the middle of the trial the examiner's report? Not the report, the actual live testimony. The live testimony at trial was that. Wasn't the testimony consistent with what's in the report? It was inconsistent with what he said at the preliminary hearing. So the medical examiner's testimony was not consistent between the preliminary hearing and the trial. So that was the essence of the inconsistency. The inconsistency was whether or not there was proof that blood was still pumping at the time the second bullet entered his body. He didn't say that in the... He did not say that at the prelim. And so that would allow for the trial strategy that he was already dead at the time the second bullet entered. It's a substance for cross-examination, isn't it? It is. Did he cross-examine on that point? He did not. Was he deficient in not doing that? Deficient? Possibly. Constitutionally ineffective? I don't think so. Not cross-examining on the discrepancy between the preliminary hearing and the trial is not ineffective? I don't believe it is. When it's the essence of your theory of defense? I mean, it might get close, but I really don't think it is. I think it's very easy for us to stand here and say, oh, my gosh, how could he not? But I have to say I'm not sure that that rises to the level of a constitutional deficiency. Beyond that... What would in that matrix? That's a fair question. I have to give that more thought than I have probably time for now. To bring this back, though, even if trial counsel, let's say, were ineffective, we're still in Martinez's land. He still has to prove that PCRI counsel is ineffective for not raising a claim he had no idea existed because Workman, despite it being this amazing claim, didn't bother to tell PCRI counsel about it. He never told him there was a promise. Why couldn't PCRI counsel pick this up from just looking at the record? Where in the record would it possibly have said there was a promise? I mean, that's just something that happens between defense counsel and Workman. It would be only something that Workman would know. There was all kinds of correspondence back and forth between the counsel. And doesn't it tell us something that Workman didn't mention in any of that correspondence? He didn't put it in his pro se PCRI petition. He had multiple opportunities to stand up. He did put it in his habeas. At this point, I mean, it's such a mess. Isn't there enough just to simply remand for an evidentiary hearing and try to figure out what the real facts are here? Honestly, if this were a direct appeal, there probably would be. But this is under AEDPA. And AEDPA, unlike McCoy, that's cited by Workman, says the opposite. In McCoy, you're supposed to hold a hearing. But under AEDPA, the rule is we don't have a hearing unless you stand up and prove either that there's a new constitutional rule or there were new undiscoverable facts. We have neither of those things here. So how burdensome would it be on the Commonwealth to participate in an evidentiary hearing? Not terribly. But that's not really my point. Just ask. Yeah. It appears I'm out of time. I'm happy to answer any further questions. But otherwise, I will let counsel have his rebuttal. Thank you. Thank you. Three quick points, Your Honor. First, Judge Flynn, as it's absolutely true, the trial counsel made no opening statement, not before the state's case began. And even when defense lawyers sometimes reserve their opening statements to come before they're going to put on their case, there was really no opening statement there either. Trial counsel stood up and said, as you know, Judge Ambrose, I'm not going to put on any evidence. That is the extent of it. Was defense counsel ambushed by the medical examiner's testimony? I don't think it was inconsistent. I think it was certainly additional. Trial counsel has an obligation before providing that kind of advice to a client to do one's homework. He has an obligation to go in and interview the medical examiner and ask questions prior to trial. He has an obligation, perhaps, if that's going to be your defense, he has an obligation perhaps to ask the court for funds to hire one's own expert. What about not cross-examining the inconsistency between the preliminary testimony and the trial testimony? I didn't hear the question. What about not cross-examining the witness with respect to the inconsistency between the trial testimony and the preliminary testimony? It's extraordinary. But that's the essence of your defense. It's extraordinary. I looked over and over to try and find, is there some expression of incredulity? Is there some expression of upset? Wow, the medical examiner, Dr. Rubin, is on the stand. Is there any of that? No. It never comes out until closing argument to the jury. How important was that evidence? If it's meaningless, what's the difference? If your defense is, ladies and gentlemen of the jury, you cannot convict my client because Mr. Hunt was already dead, it's critical, absolutely critical. Was that the defense? That was the extent of trial counsel's closing argument to the jury. Then the examiner, because of the newly discovered, I suppose, evidence? It wasn't newly discovered, was it? It was not newly discovered. It was just a change? Yes. And because of that, he was able to testify that he was not dead. Is that correct? That's correct. Okay. Now, I'm not a doctor. Trial counsel wasn't a doctor as far as I know. You might find that in an inventory hearing that trial counsel is a doctor. But it seems to me it's a reasonable question for a lawyer to ask, is it, in fact, true that if blood comes out from a wound, that that means the person is still alive and the heart is still pumping? Or might someone have been dead for minutes, and yet there could be blood that exudes from that wound? We don't know. That's among the reasons. How are you going to get a red transferred intent?  And then he meant to kill Moses. So it's interesting. We've talked a lot about whether or not trial counsel was effective or had a cogent defense theory. Indeed, trial counsel cross-examined two lay witnesses, both Jason Allen and James Clayton, to try and shake them on their testimony that they saw Mr. Workman fire a gun. If your theory is that Mr. Workman was firing the gun at someone else in a defense of others' theory, he's trying to protect his friend, Watson Hunt, who's lying in the street and has a legal right to defend Mr. Hunt, then why would you ask cross-examination questions of lay witnesses to try and shake them on their testimony that they saw Mr. Workman shoot at all? That's completely inconsistent. So it seems to me that you've got to make a decision as a trial lawyer about whether you're going to present a defense of others' theory or whether you're going to present a theory that my client didn't do it or whether you're going to present a theory that the victim was already dead at the time that your client's bullet ricocheted into the body. All of those three things are all inconsistent, and yet trial counsel did all of them. Thank you. Thank you very much. Thank you to both counsel, and we'll take the matter under advisement.